[Cite as *State v. Sparks*, 2014-Ohio-1130.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NOS. CA2013-02-010 |
| Plaintiff-Appellant/ | : | CA2013-02-015 |
| Cross-Appellee, | | |
| | : | O P I N I O N |
| | | 3/24/2014 |
| - vs - | : | |
| | : | |
| WILLIAM SPARKS, | : | |
| | : | |
| Defendant-Appellee/ | | |
| Cross-Appellant. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 12CR28428

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellant/cross-appellee

Jeremiah J. Denslow, First National Plaza No. 2000, 130 West Second Street, Dayton, Ohio 45402, for defendant-appellee/cross-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellee/cross-appellant, William Sparks, appeals his convictions in the Warren County Court of Common Pleas for trafficking in, cultivation of, and possession of marijuana, as well as possession of cocaine, possession of criminal tools, and engaging in a pattern of corrupt activity. Plaintiff-appellant/cross-appellee, the state of Ohio, appeals the decision of the trial court sentencing Sparks to community control rather than prison.

{¶ 2} This case completes the trilogy begun in *State v. Baker*, 12th Dist. Warren No. CA2012-12-127, 2013-Ohio-2398, and continued in *State v. Honeycutt*, 12th Dist. Warren No. CA2013-02-018, 2014-Ohio-352. These cases all involve individuals variously involved in the cultivation and/or trafficking of marijuana. As the "trilogy" characterization suggests, there is substantial overlap of facts and actors among the cases. The three cases concern the proper venue for the trial of persons charged with engaging in a pattern of corrupt activity in violation of R.C. 2923.32 and other related course-of-conduct offenses, and particularly whether Warren County, Ohio was a proper venue. In *Baker* and *Honeycutt* we answered that question in the negative.

{¶ 3} In 2011, the Warren County Drug Task Force began investigating Tyler Pagenstecher on suspicion of drug trafficking after one of its undercover officers purchased marijuana from Pagenstecher on three different occasions in the Mason, Warren County, Ohio area. Pagenstecher was a juvenile at the time. According to the undercover officer, the marijuana was grown locally. During its investigation, the Warren County Drug Task Force determined that Pagenstecher's supplier was Michael Lopez who, in turn, purchased his marijuana from a married couple, Cody and Stacy Lampe. The Lampes grew their own marijuana in Norwood, Hamilton County, Ohio, and also purchased marijuana from Justin Baker. The Lampes would sell the marijuana they cultivated. Baker grew substantial amounts of marijuana in multiple locations, including a "grow house" on Noble Avenue in Hamilton, Butler County, Ohio, and a "grow warehouse" on Creek Road in Hamilton County, Ohio. The utilities of the Noble Avenue house were in Sparks' name. In exchange for growing and processing marijuana for Baker at the Noble Avenue house, Sparks was allowed to stay in the house rent-free, and Baker paid the utilities for the house and gave Sparks a few hundred dollars every month. Sparks was not involved at all with the Creek Road warehouse.

**{¶ 4}** Following his arrest and a search of his house, Pagenstecher agreed to assist the Warren County Drug Task Force by arranging a buy from Lopez of his usual purchase of four ounces of marijuana. Thus, on January 13, 2012, Pagenstecher, at the request of the task force, arranged to meet Lopez at a Walmart in Warren County, Ohio. Members of the task force were waiting for Lopez, and he was immediately apprehended. Lopez also agreed to assist the task force by arranging a buy from the Lampes of his usual purchase of a pound of marijuana. The arranged buy took place on February 1, 2012, at the Lampes' house in Hamilton County, Ohio. As a result of the buy, the Lampes were apprehended, and they too agreed to assist the task force.

**{¶ 5}** Cody Lampe told the task force about his own grow operation; the task force went to, and seized all of the evidence of, his grow operation. Subsequently, Cody Lampe set up a meeting with Baker. Cody Lampe agreed to wear a wire to allow the task force to listen to his conversation with Baker. The conversation took place at a bar in Butler County, Ohio. During the conversation, Cody Lampe paid Baker $3,000 or $3,800 for marijuana he had previously received from Baker. Following their conversation, Baker left the bar and traveled to the Creek Road warehouse in Hamilton County, Ohio. Members of the task force followed Baker and observed him enter the warehouse.

**{¶ 6}** On February 17, 2012, search warrants were executed on both the warehouse and the Noble Avenue house. Officers recovered over 38,000 grams of marijuana from the warehouse, as well as numerous tools used in the cultivation of marijuana, including grow lights, timers, tanks of carbon dioxide, clay pellets, scales, and ventilation equipment. The grow operation in the warehouse was described as being "substantial." Officers recovered over 9,000 grams of marijuana from the Noble Avenue house, specifically, 51 small marijuana plants (two to four inches tall) and several very large, very mature marijuana plants with very large buds the size of a small Nerf football. Officers also recovered numerous tools

used in the cultivation of marijuana, including grow lights, tanks of carbon dioxide, clay pellets, ventilation equipment, and a digital scale. In the kitchen, inside a microwave, officers found a straw with white powder residue, a small amount of white powder, and a baggie of white powder on a dinner plate. The white powder was later identified as cocaine. Sparks was found inside the house during the execution of the search warrant. Sparks admitted the cocaine was his.

{¶ 7} On July 13, 2012, Sparks was indicted on one count of trafficking in marijuana, one count of possession of marijuana, one count of cultivation of marijuana, one count of possession of criminal tools, one count of possession of cocaine, and one count of engaging in a pattern of corrupt activity. Sparks waived his right to a jury trial and elected to have the trial court hear his case. Following a one-day bench trial in November 2012, the trial court found Sparks guilty on all counts and sentenced him to three years of community control.

{¶ 8} The state appeals, raising one assignment of error. On cross-appeal, Sparks raises one cross-assignment of error. We address Sparks' cross-assignment of error first as it is dispositive of the case.

{¶ 9} Sparks' cross-assignment of error:

{¶ 10} THE TRIAL COURT ERRED IN CONVICTING APPELLANT (SIC) IN AN IMPROPER VENUE.

{¶ 11} Sparks argues the state failed to prove that venue was proper in Warren County because no element of his pattern of corrupt activity occurred in Warren County. Sparks contends the state failed to prove he "participated in an enterprise, with a structure, for the sale of marijuana in Warren County." Further, "[his] conduct in Butler County cannot be connected to activity that occurred in Warren County by other individuals. As a result, Warren County was an improper venue[.]"

{¶ 12} "'Venue' commonly refers to the appropriate place of trial for a criminal

- 4 -

prosecution within a state." *State v. Williams*, 53 Ohio App.3d 1, 5 (10th Dist.1988). The Ohio Constitution, Article I, Section 10 establishes a defendant's right to "a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." Establishing the correct venue is imperative in order to "give the defendant the right to be tried in the *vicinity* of his alleged criminal activity, [and] to limit the state from indiscriminately seeking a favorable location for trial or selecting a site that might be an inconvenience or disadvantage for the defendant." (Emphasis sic.) *State v. Meridy*, 12th Dist. Clermont No. CA2003-11-091, 2005-Ohio-241, ¶ 12.

{¶ 13} Venue is not a material element of any offense charged. *State v. Headley*, 6 Ohio St.3d 475, 477 (1983). However, the state "must prove beyond a reasonable doubt that the crime alleged was committed in the county where the indictment was returned and the trial held, or that the accused has waived this right; otherwise, the accused cannot be convicted." *Meridy* at ¶ 12; *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, ¶ 19.

{¶ 14} The standard for establishing venue is whether the defendant has a "significant nexus" with the county where the trial was held. *State v. Mielke*, 12th Dist. Warren No. CA2012-08-079, 2013-Ohio-1612, ¶ 14. As a result, and pursuant to R.C. 2901.12, Ohio's venue statute, "[t]he trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." R.C. 2901.12(A).

{¶ 15} Ohio's venue statute further provides that when an offender commits offenses in different jurisdictions as part of a course of criminal conduct, venue lies for all the offenses in any jurisdiction in which the offender committed one of the offenses or any element thereof. R.C. 2901.12(H). Offenses "committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective" serve as "prima facie evidence of

a course of criminal conduct." R.C. 2901.12(H)(3).

{¶ 16} In the case at bar, none of the marijuana-related offenses (trafficking, possession, or cultivation), the criminal-tools-possession offense, or the cocaine-possession offense, nor any elements thereof, occurred in Warren County. Rather, those offenses all occurred in Butler County. Nonetheless, the state alleged that Warren County was the proper venue because Sparks engaged in a pattern of corrupt activity within Warren County in violation of R.C. 2923.32(A)(1).

{¶ 17} Specifically, by indicting Sparks for engaging in a pattern of corrupt activity, the state alleged that Sparks directly or indirectly conducted or participated in a corrupt activity with a group of persons associated-in-fact to traffic marijuana in Warren County. In support of its claim, the state produced evidence that Sparks cultivated and processed marijuana for Baker in the Noble Avenue house, that Baker sold marijuana to the Lampes, that the Lampes sold marijuana to Lopez, that Lopez sold marijuana to Pagenstecher, and that Pagenstecher sold marijuana in Warren County.[1] Therefore, according to the state, an element of engaging in a pattern of corrupt activity occurred when Lopez attempted to sell marijuana to Pagenstecher in Warren County on January 13, 2012, and when Pagenstecher sold marijuana in Warren County, thereby providing venue in Warren County.

{¶ 18} R.C. 2923.32(A)(1) provides that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." An "enterprise" includes "any individual, sole proprietorship, partnership, limited partnership, corporation, * * * or any organization, association, or group of persons associated in fact although not a legal

---

1. The only evidence in the record of any dealings between Lopez and Pagenstecher in Warren County is the controlled buy arranged by Pagenstecher in conjunction with the task force which occurred on January 13, 2012, in the parking lot of a Walmart. Lopez was arrested prior to making an actual sale to Pagenstecher.

entity." R.C. 2923.31(C). An enterprise "includes illicit as well as licit enterprises." *Id.* "'Pattern of corrupt activity' means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). Under R.C. 2923.31(I)(2)(c), "corrupt activity" is defined in part as engaging in or attempting to engage in drug trafficking in violation of R.C. 2925.03.

{¶ 19} "In order to establish that a defendant engaged in a pattern of corrupt activity, the state must show that the defendant was 'associated with' an 'enterprise.'" *State v. Campbell*, 5th Dist. Delaware No. 07-CA-A-08-0041, 2008-Ohio-2143, ¶ 23. "[M]erely committing successive or related crimes is not sufficient to rise to the level of a RICO violation. Both the federal and Ohio RICO statutes require an 'enterprise.'"[2] *State v. Schlosser*, 79 Ohio St.3d 329, 333 (1997).

{¶ 20} An "association-in-fact enterprise is a 'group of persons associated together for a common purpose of engaging in a course of conduct.'"[3] *Boyle v. United States*, 556 U.S. 938, 946, 129 S.Ct. 2237 (2009), quoting *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524 (1981); *Baker*, 2013-Ohio-2398 at ¶ 20. Such an enterprise must have three structural features: "'a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit those associates to pursue the enterprise's purpose.'" *Baker* at ¶ 19, quoting *Boyle* at 946. "'[T]he term "structure" means the way in which parts

---

2. Ohio's engaging in a pattern of corrupt activity, R.C. 2923.32, is similar to the federal Racketeer Influenced and Corrupt Organizations Act (RICO), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt." 18 U.S.C. 1962(c).

3. Because the Ohio statute is based upon the federal RICO statute, Ohio courts may rely upon federal case law when analyzing issues pertinent to engaging in a pattern of corrupt activity. *Baker*, 2013-Ohio-2398 at ¶ 19, fn. 1, citing *Schlosser*, 79 Ohio St.3d at 332.

are arranged or put together *to form a whole* and the interrelation or arrangement of parts in a complex entity.'" (Emphasis added.) *Baker* at ¶ 20, quoting *Boyle* at 945-946. In determining whether a group of people are associated-in-fact, "a court will look to whether the group is a 'continuing unit that functions with a common purpose.'" *Baker* at ¶ 19, quoting *Boyle* at 948. An association-in-fact enterprise "'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *Boyle* at 945, quoting *Turkette* at 583. The "concept of 'association' requires both interpersonal relationships and a common interest." *Boyle* at 946. "Moreover, the 'defendants must have conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs.'" (Emphasis sic.) *Baker* at ¶ 20, quoting *Ouwinga v. Benistar 419 Plan Services, Inc.*, 694 F.3d 783, 792 (6th Cir.2012).

**{¶ 21}** We find the state failed to prove beyond a reasonable doubt that Sparks was a direct or indirect participant in the corrupt activity of a group of persons associated-in-fact conducting the affairs of an enterprise in Warren County.

**{¶ 22}** Even when broadly construing the language of R.C. 2923.32, the record shows that the state failed to prove there was a structure that revealed Sparks acting together with others for the sale of marijuana in Warren County. Although the state adequately demonstrated that Sparks was engaged in the cultivation and trafficking of marijuana in the Noble Avenue house in Butler County, Ohio for the benefit of Baker, the state failed to demonstrate that Sparks and Baker formed an enterprise with others (i.e., Lopez or Pagenstecher) for the trafficking of marijuana in Warren County. As in *Baker* and *Honeycutt*, there was no evidence of a common purpose or relationships among the alleged associates to form a whole, as contemplated by the *Boyle* court. *See Baker*, 2013-Ohio-2398 at ¶ 21; *Honeycutt*, 2014-Ohio-352 at ¶ 23. There was no indication that Pagenstecher or Lopez, the

only two individuals who acted within Warren County, conducted or participated in conduct that pertained to Sparks' enterprise, rather than their own affairs. Moreover, contrary to the state's argument, the fact that each individual involved made money selling marijuana and is guilty of associating with others who buy or sell marijuana does not mean that they acted as a "continuing unit that functions with a common purpose." To hold otherwise "would transcend the remedial purpose of R.C. 2923.32." *Baker* at *id.*; *Honeycutt* at *id.*

{¶ 23} While the state argued that the group's common purpose was to make money, the state did not present evidence that Sparks, Baker, the Lampes, Lopez, and Pagenstecher formed an entity to earn money as an enterprise. Rather, the evidence presented at trial indicates that each individual had his own separate and distinct "business" venture when selling marijuana and that each individual participated in his own affairs. There is no evidence that any of these individuals had any involvement in the others' business affairs; there is no evidence that they joined together to make money *for the same enterprise*; *and* there is no evidence demonstrating that their motive to make a profit was common in the sense it supported the enterprise. While the various individuals may have had the same purpose in selling their marijuana (i.e., to make money), having the same purpose is not the equivalent of having a "common purpose."

{¶ 24} The record also shows the state failed to establish that the parties had relationships with one another sufficient to establish an enterprise. There is no evidence in the record that Baker or Sparks had any relationship with Lopez or Pagenstecher, the supposed participants in Sparks' enterprise. Nor is there any evidence that Pagenstecher had a relationship with the Lampes. The testimony elicited at trial revealed that Sparks (1) only dealt with Baker; (2) had no idea what Baker did with, or where he took the marijuana once he would get the marijuana from Sparks; and (3) was utterly unaware of Pagenstecher's marijuana business venture. Cody Lampe testified Baker was his supplier and that he knew

Baker cultivated marijuana. Cody Lampe also testified he did not know whether Baker sold marijuana to other people. He further testified he did not know to whom Lopez sold the marijuana Lopez purchased from him and his wife. Lopez testified he had never met Sparks.[4]

{¶ 25} The record indicates that Baker, the Lampes, Lopez, and Pagenstecher each committed crimes by selling marijuana at some given point in time. However, "the finding of 'enterprise' demands more than merely grouping related or successive crimes together" and more "than individual criminals coming into contact." *Honeycutt*, 2014-Ohio-352 at ¶ 30, citing *Baker*, 2013-Ohio-2398 at ¶ 28, fn. 6 and ¶ 29. In this case, a finding of "enterprise" would have required the state to prove that Lopez and Pagenstecher voluntarily participated in, or were in fact, associated with organized conduct for the purpose of an enterprise existing between Sparks, Baker, and the Lampes.[5] Neither Lopez nor Pagenstecher did anything to further Sparks' enterprise. Rather, they sold marijuana only in furtherance of their own personal gain.

{¶ 26} Furthermore, Sparks, Baker, the Lampes, Lopez, and Pagenstecher were not a "unit" in that each individual was not a part of the whole. A "unit," and therefore an enterprise, requires more than serial drug sales. Associations within the series of transactions between various individuals may have constituted an enterprise for purposes of

---

4. The state correctly asserts that members of an enterprise need not know "the identity or the number of their fellow members." However, as we stated in *Honeycutt*, "the state has to prove the members were '*voluntarily connected* to the pattern of corrupt activity [comprising] the enterprise.'" (Emphasis sic.) *Honeycutt*, 2014-Ohio-352 at ¶ 28, fn. 6, quoting *State v. Siferd*, 151 Ohio App.3d 103, 2002-Ohio-6801, ¶ 43 (3d Dist.). The fact that Sparks did not know either Lopez or Pagenstecher is but one factor we consider in determining whether the participation of Lopez or Pagenstecher in the alleged enterprise was a voluntary connection to or an association with Sparks. *Honeycutt* at *id.*

5. As we noted in *Baker* and *Honeycutt*, there is little doubt that Baker and the Lampes participated in each other's enterprises. In those cases and in the case at bar, the state presented evidence that Cody Lampe and Baker exchanged tips on, and equipment for, the cultivation and harvesting of marijuana. However, as we held in *Baker* and *Honeycutt*, "[t]he continuing parts * * * must function as a whole" and here, as in *Baker* or *Honeycutt*, neither Pagenstecher nor Lopez were a "continuing part" in Sparks' enterprise. *Baker*, 2013-Ohio-2398 at ¶ 29, fn. 7; *Honeycutt*, 2014-Ohio-352 at ¶ 30, fn. 8.

R.C. 2923.32 (i.e., Baker and Sparks; Baker and the Lampes; the Lampes and Lopez; Lopez and Pagenstecher), but the sequence from Sparks and Baker all the way to Pagenstecher did not constitute a unit, and therefore, was not an enterprise. Simply stated, the state did not prove that the parties functioned as separate parts to form a whole, with a shared, common purpose that Sparks engage in the sale of marijuana in Warren County.

{¶ 27} The evidence presented at trial also demonstrated that Sparks' enterprise never touched Warren County. Rather, all of Sparks' cultivation, preparation, and possession of marijuana occurred at the Noble Avenue house in Butler County. There is no evidence that Baker or Sparks ever directed drug shipments or sold their product in Warren County. Nor is there evidence that Baker or Sparks ever directed or steered others to further Sparks' enterprise in Warren County.

{¶ 28} The state seeks to distinguish our decision in *Baker* from the case at bar on the ground that in finding that Warren County was not the proper venue in *Baker*, this court

> relied heavily on the fact that the trial court had found that there was no evidence that marijuana grown by Baker entered Warren County. However, there is no such finding in this case. In this case, the trial court, acting as the trier of fact, found that, base[d] on the evidence, it was a reasonable inference that Baker's marijuana had entered Warren County, unlike the *Baker* case.

{¶ 29} The state's assertion mischaracterizes our analysis in *Baker*. The state is correct that in *Baker*, we noted the trial court's finding "that no marijuana that Baker ever grew entered Warren County." *Baker*, 2013-Ohio-2398 at ¶ 35. However, contrary to the state's assertion, we did not rely heavily on this finding in holding that venue was not proper in Warren County for purposes of R.C. 2923.32. Rather, we simply referred to the trial court's finding to further highlight the lack of an enterprise by Baker in Warren County. *See id.* at ¶ 18, 35. Our decision in *Baker* certainly did not turn on this specific facet of the case.

{¶ 30} In the case at bar, the trial court found, "I don't think there's real direct evidence

that the marijuana that was sold from the testimony here was from Mr. Baker. But I think there's a reasonable inference that can be drawn from that."[6]

{¶ 31} While the origin of the marijuana ultimately sold in Warren County is a factor to be considered in determining the extent of an enterprise, if any, it is a factor the state overemphasizes. The existence and extent of an enterprise in the case at bar should not turn upon the fluke of which source of marijuana the Lampes drew from (whether their own or Baker's grow operations) when they sold marijuana to Lopez. Rather, the more appropriate focus is upon the common purpose of the individuals involved, their combined efforts in pursuing such common purpose, and their relationship with one another. Given the state's failure in the case at bar to establish common purpose and relationship between alleged enterprise associates, the trial court's finding that the marijuana ultimately sold in Warren County came from Baker, does not change our analysis.

{¶ 32} In support of its assertion that Sparks, Baker, the Lampes, Lopez, and Pagenstecher formed a single enterprise and that venue was proper in Warren County, the state cites the United States Supreme Court's decision in *Boyle*, 556 U.S. 938, as well as the Third Appellate District's decision in *State v. Siferd*, 151 Ohio App.3d 103, 2002-Ohio-6801

---

6. It is unclear whether the trial court inferred that any of the marijuana Baker sold to the Lampes came from the Noble Avenue grow operation tended by Sparks. If so, the propriety of this inference is questionable. As stated earlier, Baker had two separate grow operations, only one of which involved Sparks. The Lampes had their own grow operation. To infer that any marijuana sold in Warren County originated from Baker's Noble Avenue grow operation would require for the trial court to first infer that marijuana Baker sold to the Lampes included marijuana from Baker's Noble Avenue grow operation, and to further infer that marijuana sold by the Lampes to Lopez originated from the Noble Avenue grow operation and not from Baker's Creek Road warehouse grow operation or the Lampes' own grow operation. There was no evidence concerning the grow operation from which marijuana sold by Baker to the Lampes originated, nor was there any evidence as to whether marijuana sold by the Lampes to Lopez originated from Baker's grow operations or the Lampes' grow operation. This appears to be an impermissible stacking of inferences. *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329, 333 (1955) (an inference which is based solely and entirely upon another inference and which is unsupported by any additional fact or another inference from other facts is an inference upon an inference and is universally condemned); 1A Wigmore, *Evidence*, Section 41, at 1106 (Tillers Rev.1983) (the true purpose of the rule against pyramiding inferences is to prevent verdicts based on mere speculation or conjecture). Furthermore, an inference that any of the marijuana sold by the Lampes to Lopez originated from Baker is untenable based solely upon the evidence that Baker sold marijuana to the Lampes, in view of the fact that the Lampes had their own separate source of marijuana.

(3d Dist.). The state cites these decisions for the proposition that enterprise structure and association with it may be informal.

{¶ 33} The issue addressed by the Supreme Court in *Boyle* was whether an association-in-fact enterprise must have "an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages." *Id.* at 945. The Supreme Court held that:

> [A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose. Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods - by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.

*Id.* at 948.

{¶ 34} *Boyle* involved an informally organized core group of individuals who, over a number of years, engaged in bank robberies, bank burglaries, and bank night-deposit box thefts. This core group would, from time to time, recruit others to assist them with their criminal activities. Edmund Boyle joined the group in 1994 and participated in numerous attempted night-deposit box thefts and bank burglaries over the ensuing five years. The Supreme Court's decision in *Boyle* stands for the proposition that an "association-in-fact" enterprise may be informal. Nonetheless, the finding of an enterprise still must consist of a "unit" with a "common purpose." Those elements are lacking in the case at bar.

{¶ 35} In *Siferd*, Donald Siferd was convicted of engaging in a pattern of corrupt activity in violation of R.C. 2923.32 based upon his association with the Gonzalez family drug ring. Siferd claimed his conviction was in error because, in spite of his numerous cocaine purchases from the Gonzalez family drug ring, he was an addict and therefore a crime victim; he did not direct the operations of the drug ring; and he was not known by all the drug ring associates of the Gonzalez family drug ring. The Third Appellate District rejected those claims as conclusive and found that managerial or supervisory direction, control of enterprise activities, and being known by or interacting with other enterprise associates were not necessary for one to be liable under R.C. 2923.32. *Siferd*, 2002-Ohio-6801 at ¶ 37, 50.

{¶ 36} *Boyle* and *Siferd* are of limited utility in resolving the question now before this court. First, *Boyle* and *Siferd* address only what is not necessary in order to find association with an enterprise (i.e., formalized organization, participation in a managerial capacity, and inter-relationship with all other enterprise associates). At most, these cases provide guidance here to the extent that the absence of formal organization, managerial control, and interaction with certain other individuals associated with the enterprise is not dispositive of whether a particular person has associated himself with that enterprise based upon the particular facts of those cases. *Boyle* and *Siferd* do not hold that the foregoing indicia are never relevant and important in determining whether an individual has associated himself with an enterprise.

{¶ 37} Additionally, *Boyle* and *Siferd* construed prerequisites for liability under R.C. 2923.32, and not venue. Construing where venue lies under R.C. 2923.32 involves a more exacting scrutiny of the several associations of the various individuals involved in the enterprise than that necessary for liability. Specifically, when the sole issue is liability, it need only be determined whether a defendant has associated with an enterprise. Once that

determination has been made, it is no longer important to define the precise parameters of the enterprise. On the other hand, because venue under R.C. 2923.32 is proper in any county in which the enterprise conducted activity, *see Mielke*, 2013-Ohio-1612 at ¶ 22, the exact parameters of the enterprise take on a much greater significance. This is particularly true where the defendant is indicted in a county other than the county in which he committed an alleged predicate offense. In such an instance, it must be determined whether other individuals committing predicate offenses in the defendant's county of indictment are a part of the same enterprise so as to subject the defendant to venue in that county even though he committed an alleged predicate offense in a different county, and not the county of indictment.

{¶ 38} The decisions in *Mielke*, *State v. Yates*, 5th Dist. Licking No. 2009 CA 0059, 2009-Ohio-6622, and *State v. Giffin*, 62 Ohio App.3d 396 (10th Dist.1991), are enlightening on this point and instructive. In those cases, the defendants were all indicted for numerous offenses, including violating R.C. 2923.32. All of the alleged R.C. 2923.32 predicate offenses committed by the defendants were committed in counties other than the county in which they were indicted and tried. However, in all of those cases, other enterprise associates had committed predicate offenses in the counties in which the defendants were tried. Upon appeal in all of those cases, the respective appellate courts found venue to be proper. However, there is an important distinction between those cases and the case at bar: in all of those cases, there was a centralization to the enterprise structure.

{¶ 39} In *Mielke*, an illegal steroid trafficking ring was run by Matthew Geraci. Geraci had a number of steroid distributors, including Mielke. All of the distributors obtained their steroids from Geraci either at his home or his office in Hamilton County. Some of Geraci's distributors sold steroids in the county of Mielke's indictment.

{¶ 40} *Yates* involved a counterfeit check cashing ring operated by Clyde Haynie.

Haynie would produce and sign counterfeit checks in Franklin County which were then cashed by various individuals, including Tamico Yates, in a variety of Ohio counties. Some of the checks were cashed in the county of Yates' indictment.

{¶ 41} Finally, *Giffin* involved a burglary ring directed from a Franklin County auction house by Tom Cummings. Cummings conducted meetings at the auction house and planned the various burglaries to take place in various counties. Some of the burglaries were committed in the county of Giffin's indictment.

{¶ 42} Although *Mielke*, *Yates*, and *Giffin* all found that venue was proper, for purposes of R.C. 2923.32, in a county other that the county where the defendants' predicate offenses were committed, all three cases involved a radically different enterprise structure than that involved here. In *Mielke*, *Yates*, and *Griffin*, all three enterprises were structured like a wheel with a hub and spokes, with the ringleader operating as the hub, and the steroid distributors, check cashers, or burglars operating as the spokes. While the spokes may not have had associations or interactions with each other, all were associated through the hub and were, therefore, a part of a common enterprise.

{¶ 43} Here, the alleged enterprise is more like a chain with one link connected only to the next. If such a structure is to be construed as an enterprise, then something more is required than what is required for a hub and spoke structure. In *Baker*, we found that Baker and Pagenstecher were not a part of a common enterprise because "[t]here is no evidence on record that any of the individuals were involved in each other's business affairs, such as setting prices or being assigned to certain 'customers' or territories, nor is there any other indication that the parties joined together to make money for the same enterprise." *Baker*, 2013-Ohio-2398 at ¶ 22. This is not to say that these indicia are necessary to establish a common enterprise in every case (*see*, for example, *Boyle* and *Siferd)*. But in a case such as

the case at bar, where each successive link in the chain becomes more remote from the links preceding it, something more than evidence of sequential drug sales is required to establish a common enterprise.

{¶ 44} Although there may a connection between Sparks on one hand and Lopez and Pagenstecher on the other hand through the Lampes and Baker, not every collection of criminals constitutes an enterprise for purposes of R.C. 2923.32. This is apparent from the Fifth Appellate District's decision in *State v. Lynch*, 5th Dist. Richland No. 11 CA 75, 2012-Ohio-2521. In *Lynch*, Scott Lynch was charged with violating R.C. 2923.32 based upon his repeated trafficking in heroin. The enterprise element of the offense was premised upon testimony that "heroin is grown in other countries, brought into the United States by various drug 'organizations' and distributed throughout U.S. cities, and then 'on down the line from bigger dealer to smaller dealer and to the user.'" *Id.* at ¶ 24. The court of appeals rejected this as a basis for establishment of an enterprise and stated that:

> The fact heroin frequently comes into the United States from foreign countries and is then redistributed does not convert appellant's separate instances of trafficking into an EPCA violation under the facts and circumstances presented. We find the evidence in this case failed to sufficiently demonstrate a distinct "structure" for purposes of proving the enterprise element of engaging in a pattern of corrupt activity under R.C. 2923.32(A)(1).

*Id.* at ¶ 28. The Fifth Appellate District recognized that mere interdependence of criminals is insufficient to establish an enterprise in the absence of a "distinct structure" to the interdependence.

{¶ 45} Contrast *Lynch* with the Second Appellate District's decision in *State v. Rogers*, 2d Dist. Miami No. 2003-CA-30, 2004-Ohio-2746, in which Barry Rogers was indicted in Miami County for various offenses, including violating R.C. 2923.32, based upon repeated trafficking in cocaine. Rogers sold cocaine to Jesse Mendez and Reginald Block in

Montgomery County. Mendez and Block sold the cocaine they purchased from Rogers in Miami County. Rogers challenged Miami County as the proper venue for his offenses on the ground he conducted no criminal activity in Miami County. Mendez testified that he and Rogers were associates in that they moved cocaine together. The Second Appellate District found that:

> Even if Rogers was not directly involved in the Miami County activities of the drug ring, venue there was proper because his predicate acts were part of a criminal course of conduct, committed in his same relationship with Mendez and the enterprise, and in furtherance of the same purpose or objective-profiting from drug trafficking. *Although this issue is close*, due to the minimal evidence in the record, we conclude that venue in Miami County was satisfactorily proven pursuant to R.C. 2901.12(H).

(Emphasis added.) (Internal citation omitted.) *Id.* at ¶ 101.

{¶ 46} *Rogers* differs from *Lynch* and the case at bar in that there was a relationship between Rogers and Mendez. Sparks had no relationship with Lopez or Pagenstecher. Significantly, on evidence much more substantial than the evidence in the case at bar regarding the interrelationship of enterprise associates, the Second Appellate District noted it was a "close" call whether Rogers' case was properly venued in Miami County.

{¶ 47} *Siferd*, although not a venue case, is enlightening on this point as it involves an enterprise structured similarly to the one involved here. In *Siferd*, in finding him to be a part of the Gonzales family drug ring, the Third Appellate District noted that Siferd purchased substantial quantities of cocaine from enterprise associates, fronted enterprise associates money to obtain cocaine for him, offered enterprise associates an alternate source for cocaine when they did not have any on hand, and was compensated by the enterprise for his involvement with a reliable flow of cocaine and free cocaine. Many of these features of an association are lacking in the case at bar.

{¶ 48} Here, the only evidence submitted by the state that Lopez and Pagenstecher

were part of an enterprise reaching to Sparks is that Lopez purchased marijuana from the Lampes and Pagenstecher purchased marijuana from Lopez. There was no evidence that Lopez or Pagenstecher assisted the enterprise, separate and apart from purchasing marijuana. There was no evidence that the enterprise encouraged Lopez and Pagenstecher to sell marijuana or compensated them for their efforts. Simply put, Lopez and Pagenstecher were customers of those from whom they purchased marijuana and not distributors for them.

{¶ 49} In light of all of the foregoing, we find that the state failed to prove that Sparks engaged in a pattern of corrupt activity because there was no evidence that Sparks was involved in an association-in-fact enterprise with Lopez or Pagenstecher. While Sparks, by himself or through Baker, may have engaged in a pattern of corrupt activity in Butler County, no element of this offense occurred in Warren County. The state has failed to prove venue beyond a reasonable doubt and an acquittal must be entered upon the record. *See Hampton*, 2012-Ohio-5688 at ¶ 24; *Baker*, 2013-Ohio-2398 at ¶ 38.

{¶ 50} Having found that the state failed to prove that Warren County was the proper venue, we sustain Sparks' first assignment of error. Sparks' convictions are reversed and vacated, and double jeopardy attaches to bar the state from reprosecuting these charges. *See Baker* at ¶ 39.

{¶ 51} We now turn to the state's assignment of error:

{¶ 52} THE WARREN COUNTY COURT OF COMMON PLEAS ABUSED ITS DISCRETION WHEN IT SENTENCED SPARKS TO SERVE COMMUNITY CONTROL BECAUSE IT FAILED TO MAKE THE REQUISITE STATUTORY FINDINGS TO SUPPORT ITS DECISION TO DEPART FROM THE PRESUMPTIONS IN FAVOR OF A PRISON TERM.

{¶ 53} The state argues the trial court abused its discretion in sentencing Sparks to

community control because the trial court failed to make the requisite statutory findings under R.C. 2929.13(D)(2) when it departed from the presumption of a prison sentence in favor of community control.

{¶ 54} Given our disposition of Sparks' cross-assignment of error, the state's assignment of error is moot. *See* App.R. 12(A)(1)(c).

{¶ 55} Judgment reversed, Sparks' convictions are vacated, and Sparks is hereby discharged.

HENDRICKSON, P.J., concurs.

RINGLAND, J., dissents.

**RINGLAND, J., dissenting.**

{¶ 56} I respectfully dissent from the majority's decision as I would find that Sparks was part of an informal criminal enterprise, and that the enterprise's activities extended into Warren County.

{¶ 57} I first recognize that this court has previously held in *Baker* that no criminal enterprise existed between the various individuals involved here. 2013-Ohio-2398, ¶ 21-22. That holding was based on findings that: (1) "there was no common purpose established nor relationships among associates to form a whole," (2) the conduct of Pagenstecher and Lopez was for their own benefit rather than that of an enterprise, (3) none of the "individuals were involved in each other's business affairs, such as setting prices or being assigned to certain 'customers' or territories," (4) "there is no conduct, conspiracy, or element of control attributed to Baker placing his enterprise or his associates in Warren County," and (5) "the state did not prove that the marijuana that Baker sold to the Lampes was the same marijuana that was eventually sold in Warren County to Pagenstecher." Upon further reflection, I now find that

we interpreted R.C. 2923.32 too narrowly in *Baker*.

{¶ 58} While I accept that each of the individuals involved here were acting for their own benefit, I do not accept that fact alone as dispositive of whether they were also acting for a common purpose. Indeed, I find it unlikely that most members of any criminal enterprise act altruistically. Each member involved in the facts before us engaged in a pattern of corrupt activity for the common purpose of selling and trafficking in marijuana. Whether they knowingly, recklessly or otherwise engaged in that activity is irrelevant as offenses under R.C. 2923.32 are subject to strict liability. *State v. Schlosser*, 79 Ohio St.3d 329, 333 (1997). They acted in concert with one another and relied on one another to carry out their common purpose. It is additionally irrelevant whether Baker personally knew of or was aware of Lopez or Pagenstecher so long as they were all voluntarily connected to the pattern of corrupt activity comprising the enterprise. *Siferd*, 2002-Ohio-6801 at ¶ 43.

{¶ 59} Furthermore, I do not believe that it is necessary for the state to prove that the marijuana Baker sold to Lampe ever made it into Warren County. The relevant question is not whether Sparks' specific contributions to the enterprise reached Warren County, but rather whether Sparks was part of a group of persons associated-in-fact conducting the affairs of an enterprise that acted in Warren County. Accordingly, I find it irrelevant whether Baker's marijuana or the marijuana cultivated by Sparks reached Warren County, so long as they were part of an enterprise that engaged in corrupt activity in Warren County.

{¶ 60} While the Lampes may have maintained their own grow operation, that does not exclude Baker's contributions to the "pool" of marijuana from the enterprise. It matters not whether a particular sale from the Lampes to Lopez contained marijuana from their own portion of the "pool" or from Baker's portion, so long as all of them were involved in the same enterprise. For instance, if the Lampes sold the marijuana they purchased from Baker to someone other than Lopez, thus allowing them to sell their own marijuana to Lopez, Baker

has still played a role in the enterprise that extended into Warren County. Here, the "pooling" of their marijuana contributed to the same enterprise which engaged in corrupt activity in Warren County. Accordingly, I am compelled to find that an informal enterprise existed similar to that which was contemplated by the United States Supreme Court in *Boyle*. 556 U.S. 938.

{¶ 61} I note that even if I were to find that the question of whether Baker's marijuana entered Warren County is relevant, the present case would be distinguished from *Baker*, 2013-Ohio-2398. In *Baker*, the trial court stated that, "I do not find that there was evidence that showed that the marijuana that was grown by Mr. Baker ever made it to Warren County." *Id*. at ¶ 35. In contrast, the trial court in the present case found that, "there's a reasonable inference that can be drawn" that marijuana sold in Warren County came from Baker.

{¶ 62} In light of the foregoing, having found that we previously interpreted R.C. 2923.32 too narrowly, I must respectfully dissent from the majority's decision and would affirm the trial court.