[Cite as *State v. Lampe*, 2015-Ohio-3837.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


STATE OF OHIO,                                  :

    Plaintiff-Appellee,                    :            CASE NO.   CA2015-03-028

    - vs -                                       :            O P I N I O N
                                                               9/21/2015

                                                  :

CODY LAMPE,                                    :

    Defendant-Appellant.               :


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 12CR28429


David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Tyack, Blackmore, Liston & Nigh Co., L.P.A., James P. Tyack, 536 South High Street, Columbus, Ohio 43215, for defendant-appellant


**RINGLAND, J.**

{¶ 1}   Defendant-appellant, Cody Lampe, appeals from a decision of the Warren County Court of Common Pleas denying his motion to withdraw his guilty plea.  For the reasons stated below, we affirm the decision of the trial court.

{¶ 2}   On July 13, 2012, Lampe was indicted on four counts of trafficking in marijuana, two counts of possession of marijuana, two counts of possessing criminal tools, one count of

cultivation of marijuana, one count of engaging in corrupt activity, and one count of endangering children. The charges resulted from allegations that Lampe cultivated and sold marijuana. The charges also stated that Lampe and his wife, Stacey Lampe, had a drug connection with Tyler Pagenstecher, Michael Lopez, Justin Baker, Allen Honeycutt, and William Sparks. Members of this group were alleged to have cultivated marijuana, sold the marijuana to another drug trafficker in the group, who then sold the marijuana either to consumers or to another trafficker. While all the individuals involved were indicted in Warren County, Ohio, most of the drug activity occurred in neighboring counties. In fact, in the cases involving the Lampes, Baker, Honeycutt, and Sparks, the only connection the defendants had to Warren County was that the marijuana that was cultivated was eventually sold in Warren County by Pagenstecher and Lopez.

{¶ 3} On October 31, 2012, Lampe pled guilty to two counts of trafficking in marijuana, one count of cultivation of marijuana, and one count of engaging in a pattern of corrupt activity. On January 29, 2013, the trial court sentenced Lampe to a five-year term of imprisonment with eligibility for judicial release as agreed to by Lampe and the state in exchange for Lampe's cooperation with the state's case against his co-defendants.

{¶ 4} While Lampe pled guilty, the cases involving Baker, Honeycutt, and Sparks proceeded to trial, and the defendants were found guilty as charged and sentenced accordingly. Baker, Honeycutt, and Sparks appealed their convictions to this court. In June 2013, this court found the state failed to prove venue was proper in Warren County in regards to Baker because he "did not cultivate/traffic/possess marijuana there, nor did he possess criminal tools or engaged in a pattern of corrupt activity in Warren County." *State v. Baker*, 12th Dist. Warren No. CA2012-12-127, 2013-Ohio-2398, ¶ 17. Specifically, this court held that the state failed to prove Baker engaged in a pattern of corrupt activity because there was no evidence that Baker was involved in an enterprise to traffic marijuana in Warren

County.  *Id.* at ¶ 18.  This court came to similar conclusions in *State v. Honeycutt*, 12th Dist. Warren No. CA2013-02-018, 2014-Ohio-352, and *State v. Sparks*, 12th Dist. Warren Nos. CA2013-02-010 and CA2013-02-015, 2014-Ohio-1130.

{¶ 5}  On November 26, 2014, Lampe moved the trial court to withdraw his guilty plea. Lampe argued his plea was manifestly unjust because this court changed the law regarding "enterprise" in his co-defendants' appeals.  The trial court denied this motion.  Lampe now appeals, asserting a sole assignment of error.

{¶ 6}  THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING APPELLANT'S MOTION TO WITHDRAW PLEA OF GUILTY FOLLOWING SENTENCE.

{¶ 7}  Lampe argues the trial court abused its discretion in denying his motion to withdraw his guilty plea.  Lampe asserts that in *Baker*, 2013-Ohio-2398, *Honeycutt*, 2014-Ohio-352,  and *Sparks*, 2014-Ohio-1130 (*Baker* trilogy), this court changed the law regarding the elements of engaging in a pattern of corrupt activity by redefining "enterprise" and adopting the federal operations and management test.  Therefore, a manifest injustice resulted because Lampe did not receive the benefit of the change in the law.  In the alternative, Lampe maintains that if this court did *not* change the law and the federal operations and management test was already the law in this district, his trial counsel was ineffective for failing to advise Lampe of the law as it existed.

Standard of Review

{¶ 8}  Pursuant to Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."  A defendant who seeks to withdraw a plea after the imposition of sentence, such as the case here, has the burden of establishing the existence of a manifest injustice.  *State v. Williams*, 12th Dist. Clermont No. CA2012-08-060, 2013-Ohio-1387, ¶ 11,

citing *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus.

{¶ 9} In general, "manifest injustice relates to a fundamental flaw in the proceedings that results in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Hobbs*, 12th Dist. Warren No. CA2012-11-117, 2013-Ohio-3089, ¶ 9. "The requirement of demonstrating a manifest injustice is designed to discourage a defendant from pleading guilty to test the weight of the potential reprisal, and later attempting to withdraw the plea if the sentence was unexpectedly severe." *Williams* at ¶ 13. This sets forth an extremely high standard that is allowable only in extraordinary cases. *State v. Worthington*, 12th Dist. Brown No. CA2014-12-022, 2015-Ohio-3173, ¶ 14.

{¶ 10} "A trial court's decision regarding a post-sentence motion to withdraw a guilty plea is reviewed on appeal under an abuse of discretion standard." *State v. Rose*, 12th Dist. Butler No. CA2010-03-059, 2010-Ohio-5669, ¶ 15. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *State v. Robinson*, 12th Dist. Butler No. CA2013-05-085, 2013-Ohio-5672, ¶ 14.

Manifest Injustice

{¶ 11} Lampe maintains that in the *Baker* trilogy, this court redefined "enterprise" as requiring a businesslike entity and adopted the federal operations and management test as set forth in *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163 (1993). Lampe maintains our adoption of the federal operations and management test resulted in a manifest injustice and he should be permitted to withdraw his plea. In the *Baker* trilogy, the question before this court was whether the defendant committed any element of engaging in a pattern of corrupt activity in Warren County, thereby establishing proper venue in Warren County.[1] *Sparks*,

---

1. The facts, questions presented, and law in each case in the *Baker* trilogy are substantially similar. *See Sparks* at ¶ 2. Therefore, this opinion will cite to *Sparks* in our recitation of the law decided in those cases.

- 4 -

2014-Ohio-1130 at ¶ 16. In order to find that the defendant engaged in a pattern of corrupt activity, this court had to determine if the defendant was part of an association-in-fact enterprise to traffic marijuana in Warren County. *Id.* at ¶ 17.

{¶ 12} Regarding what constitutes an associated-in-fact enterprise, this court relied on the United States Supreme Court decision in *Boyle v. United States*, 556 U.S. 938, 129 S.Ct. 2237 (2009). Specifically, this court stated,

> An "association-in-fact enterprise is a 'group of persons associated together for a common purpose of engaging in a course of conduct.'" *Boyle v. United States*, 556 U.S. 938, 946, 129 S.Ct. 2237 (2009), quoting *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524 (1981); *Baker,* 2013-Ohio-2398 at ¶ 20. Such an enterprise must have three structural features: "'a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit those associates to pursue the enterprise's purpose.'" *Baker* at ¶ 19, quoting *Boyle* at 946. "'[T]he term "structure" means the way in which parts are arranged or put together *to form a whole* and the interrelation or arrangement of parts in a complex entity.'" (Emphasis added.) *Baker* at ¶ 20, quoting *Boyle* at 945-946. In determining whether a group of people are associated-in-fact, "a court will look to whether the group is a 'continuing unit that functions with a common purpose.'" *Baker* at ¶ 19, quoting *Boyle* at 948. An association-in-fact enterprise "'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *Boyle* at 945, quoting *Turkette* at 583. The "concept of 'association' requires both interpersonal relationships and a common interest." *Boyle* at 946. "Moreover, the 'defendants must have conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs.'" (Emphasis sic.) *Baker* at ¶ 20, quoting *Ouwinga v. Benistar 419 Plan Services, Inc.*, 694 F.3d 783, 792 (6th Cir.2012).

*Sparks* at ¶ 20.

{¶ 13} The *Baker* trilogy was not the first occasion this court defined "enterprise" or relied on *Boyle* in stating its definition. This court had previously looked to *Boyle* to describe an enterprise in a similar manner; as having a purpose, relationships among those associated in the enterprise, and longevity sufficient to permit the associates to pursue the

enterprise's purpose. *State v. Dodson*, 12th Dist. Butler No. CA2010-08-191, 2011-Ohio-6222; *see State v. Baker*, 12th Dist. Warren No. CA2011-08-088, 2012-Ohio-887, ¶ 10 (*Baker II*)(enterprise is simply continuing unit functioning with common purpose).

{¶ 14} Lampe argues in defining "enterprise" this court adopted the federal operations and management test. The federal operations and management test concerns an individual's level of participation in an enterprise to subject that individual to liability under the federal Racketeer Influenced Corrupt Organizations (RICO) statute, 18 U.S.C. 1962(c). *Reves*, 507 U.S. 170. In *Reves*, the United States Supreme Court stated that under RICO an individual "must have some part in directing" the affairs of the enterprise. *Id.* at ¶ 179. However, "liability is not limited to those with primary responsibility for the enterprise's affairs * * * [and] liability is not limited to those with a formal position in the enterprise, but *some* part in the directing the enterprise's affairs is required." (Emphasis sic.) *Id.*

{¶ 15} Beyond citing to the state's memorandum in support of jurisdiction to the Ohio Supreme Court, Lampe provides no rationale to support his argument that we adopted the federal operations and management test.[2] The question before this court in the *Baker* trilogy was whether an enterprise to traffic marijuana in Warren County existed at all and whether each particular defendant participated in that enterprise. In *Reves*, the United States Supreme Court addressed an all-together different question: the level of participation a suspect must have in directing the affairs of an enterprise under the federal RICO statute. While the Ohio engaging in a pattern of corrupt activity statute, R.C. 2923.32, is similar to the federal RICO act, this court did not mention *Reves* in the *Baker* trilogy. This court also did not hold that individuals had to participate in the operation and management of the enterprise

---

2. The Ohio Supreme Court declined jurisdiction for all cases in the *Baker* trilogy. *State v. Baker*, 137 Ohio St.3d 1411, 2013-Ohio-5096; *State v. Honeycutt*, 139 Ohio St.3d 1417, 2014-Ohio-2487; *State v. Sparks*, 139 Ohio St.3d 1485, 2014-Ohio-3195.

to be subject to liability.

{¶ 16} Further, the federal operations and management test has never been the law in this district. Similar to the *Baker* trilogy, in our earlier cases discussing the definition of enterprise in *Baker II* and *Dodson*, this court did not cite to *Reves*. Instead, this district has continued to rely on *Boyle* regarding the meaning of enterprise. *See Baker*, 2013-Ohio-2398 at ¶ 16 (rejecting opportunity to depart from our precedent in *Baker II* and *Dodson* and continuing to rely on definition of enterprise in *Boyle*); *Honeycutt*, 2014-Ohio-352 at ¶ 20.

{¶ 17} In the *Baker* trilogy, we also did not change our law and require "enterprise" to be a businesslike entity. Instead, this court's decisions were based on the particular facts presented in each case. For example, in *Sparks*, this court held that the state failed to prove Sparks was involved in an associated-in-fact enterprise to traffic marijuana in Warren County because (1) there was not a "structure that revealed Sparks acting together with others for the sale of marijuana in Warren County," (2) "there was no evidence of a common purpose or relationships among the alleged associates to form a whole," and (3) there was no indication that the two individuals who acted within Warren County conducted or participated in conduct that pertained to Sparks' enterprise, rather than their own affairs. *Sparks*, 2014-Ohio-1130 at ¶ 22. *See Honeycutt* at ¶ 24 (no evidence individuals joined together to sell marijuana and make money for the same enterprise); *Baker* at ¶ 21 (no common purpose or relationships among associates to form enterprise).

{¶ 18} Moreover, even if this court did change the law regarding "enterprise," Lampe entered a guilty plea to the charges against him and therefore has waived the opportunity to challenge venue. Venue is not jurisdictional and is also not a material element of the offense. *State v. Morrar*, 12th Dist. Madison No. CA2013-08-027, 2014-Ohio-3663, ¶ 12. By pleading guilty, a defendant admits to committing the offense as charged. *State v. Jordan*, 12th Dist. Warren No. CA2014-04-051, 2015-Ohio-575, ¶ 29. Further, a guilty plea waives

the opportunity to challenge the factual issue of venue. *Id.* The record reflects that Lampe was aware that by pleading guilty he was admitting to committing the four offenses, and, consequently, the state was not required to prove his guilt beyond a reasonable doubt.

## Ineffective Assistance of Counsel

**{¶ 19}** Lampe argues if this court did not redefine "enterprise" and the federal operations and management test was already the law in this district, then his trial counsel was ineffective for failing to advise Lampe of this test. Ineffective assistance of counsel is a proper basis for seeking a post-sentence withdrawal of a guilty plea. *State v. Worthington*, 12th Dist. Brown No. CA2014-12-022, 2015-Ohio-3173, ¶ 16. When an alleged error underlying a motion to withdraw a guilty plea is ineffective assistance of counsel, the defendant must show (1) his counsel's performance was deficient and (2) that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment. *Worthington* at ¶ 16.

**{¶ 20}** As an initial matter, Lampe could have challenged his trial counsel's alleged deficient performance and the lack of venue by directly appealing his conviction and sentence. As we have previously stated, "claims submitted in support of a Crim.R. 32.1 motion to withdraw plea that could have been raised on direct appeal, but were not raised [on] direct appeal are barred by res judicata." *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 11. Lampe argues that if the federal operations and management test was already the law of this district before the *Baker* trilogy, then it was ineffective assistance for his counsel to fail to advise him of this test. Lampe failed to file a direct appeal and there is nothing that would have prevented Lampe from making this argument on direct appeal. Consequently, his argument is barred by res judicata.

{¶ 21} However, even if Lampe's argument was not barred by res judicata, we find that he received effective assistance of counsel. In support of his motion to withdraw his plea, Lampe submitted an affidavit where he averred that had he known the relevance of the federal operations and management test and a businesslike entity to a defense of engaging in a pattern of corrupt activity, he would not have pled guilty. Lampe's trial counsel also produced a similar affidavit. As discussed above, this court did *not* adopt the federal operations and management test in the *Baker* trilogy nor did it require an enterprise to be a businesslike entity. This was also *not* the law in our district prior to the *Baker* trilogy. Therefore, whether or not Lampe would have pled guilty in light of this test is immaterial to his motion to withdraw his guilty plea. Lampe's trial counsel was not deficient for failing to advise Lampe regarding the federal operations and management test or the businesslike entity requirement.

{¶ 22} Finally, we note that it is not the role of the appellate court to second guess strategic decisions of trial decisions. *State v. Lloyd*, 12th Dist. Warren Nos. CA2007-04-052 and CA2007-04-053, 2008-Ohio-3383, ¶ 61. Our decisions in *Baker, Honeycutt,* and *Sparks* finding that the state did not establish venue was proper in Warren County were based on the particular facts of each case. While we express no judgement regarding whether venue was proper in this case, the facts underlying Lampe's convictions are not identical of the defendants in the *Baker* trilogy and Lampe was more closely connected to Warren County than Baker, Honeycutt, and Sparks. In exchange for pleading guilty, 7 of the 11 counts in the indictment against Lampe were dismissed. The record demonstrates that Lampe's guilty plea was simply his decision to enter into the certainty of a plea deal and the possibility of a recommended five-year sentence over the uncertainty of proceeding to trial and receiving a much greater sentence. If Lampe was found guilty as to all the counts on the indictment, he would have faced a minimum 17-year prison sentence.

{¶ 23} Accordingly, we cannot say the trial court abused its discretion in denying Lampe's motion to withdraw his guilty plea. Lampe has failed to show the type of extraordinary circumstances that would require the withdrawal of his plea to correct a manifest injustice. Lampe's sole assignment of error is overruled.

{¶ 24} Judgment affirmed.

PIPER, P.J., and S. POWELL, J., concur.