[Cite as *State v. Moore*, 2024-Ohio-1736.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

GERRY MOORE,

    DEFENDANT-APPELLANT.

CASE NO. 9-23-25

**O P I N I O N**

Appeal from Marion County Common Pleas Court
General Division
Trial Court No. 22 CR 380

**Judgment Affirmed**

**Date of Decision:  May 6, 2024**

**APPEARANCES:**

    *Karin L. Coble* **for Appellant**

    *Kristin R. Palmer* **for Appellee**

    *Michael J. Hendershot* **for Amicus Curiae,**
    **Ohio Attorney General Dave Yost**

    *Steven L. Taylor* **for Amicus Curiae,**
    **Ohio Prosecuting Attorneys Association**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Gerry L. Moore ("Moore") appeals the judgment of the Marion County Court of Common Pleas, arguing that the trial court erred by denying his motion to dismiss the charges on double jeopardy grounds. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On August 9, 2017, Moore was indicted in Erie County, Ohio on one count of retaliation in violation of R.C. 2921.05(B), a third-degree felony; one count attempted aggravated murder in violation of R.C. 2903.01(A) and 2923.02(A), a first-degree felony; and one count of conspiracy to commit aggravated murder in violation of R.C. 2923.01(A)(1), a second-degree felony.

{¶3} The State alleged that, while he was incarcerated in Marion County, Moore conspired to have his ex-wife, Diane, murdered. Moore purportedly offered another inmate, Richard Kiser ("Kiser"), $50,000.00 to kill Diane after being released from prison. After Moore continued discussing this matter for several months, Kiser notified Diane's attorney of Moore's statements. Law enforcement subsequently became involved and had Kiser speak with Moore while wearing a recording device. During the conversation that followed, Moore reportedly gave Kiser information about where Diane lived in Erie County; the bars she frequented; and the vehicle she drove. Further, Moore purportedly told Kiser how he could

poison Diane with a lethal dose of narcotics and frame Diane's niece by planting heroin in her car.

{¶4} After the charges were brought in Erie County, Moore filed an objection to venue, arguing that Marion County was the proper venue for this case. In response, the State asserted that the offense of retaliation was alleged to have occurred in Erie County where Diane lived. The State then argued that the other charges were part of a course of conduct that included the offense of retaliation. The trial court denied Moore's motion. At trial, Moore made a Crim.R. 29 motion that challenged venue as improper. The trial court again rejected these arguments. The jury then returned verdicts of guilty on all three charges against Moore.

{¶5} On direct appeal, Moore challenged his convictions for lack of proper venue.[1] *State v. Moore*, 6th Dist. Erie No. E-18-064, 2020-Ohio-6781, ¶ 23. The Sixth District Court of Appeals concluded

> that the conduct giving rise to the charge of retaliation was committed in its entirety while appellant was confined in Marion County. Moreover, the remaining charges in the indictment (attempted aggravated murder and conspiracy) likewise took place entirely in Marion County. Because none of the elements of any of the charged offenses occurred in Erie County, as required to establish venue under the relevant provisions of R.C. 2901.12, the state has failed to establish venue beyond a reasonable doubt in this case.

---

[1] In his appeal before the Sixth District, Moore challenged the trial court's decision to deny his motion to dismiss the indictment on venue grounds but did not address the trial court's ruling on his Crim.R. 29 motion. *Moore*, 2020-Ohio-6781, ¶ 16, 23, 46. The Sixth District concluded that the trial court did not err in denying Moore's motion to dismiss. *Id*. at ¶ 46. However, because Moore had made a Crim.R. 29 motion at trial, the Sixth District proceeded to evaluate whether the State produced evidence to establish proper venue. *Id*. at ¶ 46. *See also Id*. at ¶ 56, citing *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 24.

* * *

> Were this case to have been tried in Marion County, where venue was appropriate, appellant's convictions for attempted aggravated murder and conspiracy may have been upheld by the appellate court sitting in that jurisdiction.

*Id.* at ¶ 55, 57.  In addressing a separate assignment of error, the Sixth District also concluded that the State failed to produce sufficient evidence to establish all of the essential elements of the offense of retaliation.  *Id.* at ¶ 36.  As a result, the Sixth District vacated all three of Moore's convictions.  *Id.* at ¶ 57.

{¶6} The Ohio Supreme Court then accepted a discretionary appeal of this decision and affirmed the Sixth District's conclusion that venue was improper in Erie County.  *State v. Moore*, 169 Ohio St.3d 18, 2022-Ohio-1460, 201 N.E.3d 834, ¶ 17.  The Ohio Supreme Court then stated the following as to the issue of whether Moore could be retried on these charges in the proper venue:

> Amicus curiae Ohio Attorney General Dave Yost also asks us to clarify that double-jeopardy protections do not preclude the state from retrying Moore in a county in which venue is proper.  *See*, *e.g*, *United States v. Petlechkov*, 922 F.3d 762, 771 (6th Cir. 2019) ("A dismissal on venue grounds does not qualify as an 'acquittal' for double jeopardy purposes").  But because that issue neither was raised by the parties below nor is a part of the proposition of law we accepted, we must leave it for another day.

*Id.* at ¶ 26.

{¶7} On June 29, 2022, Moore was indicted in Marion County on one count of conspiracy to commit aggravated murder in violation of R.C. 2923.01(A)(1), a first-degree felony; one count of attempted aggravated murder in violation of R.C.

2903.01(A) and R.C. 2923.02, a first-degree felony; one count of conspiracy to commit kidnapping in violation of R.C. 2923.01(A)(1), a second-degree felony; and one count of attempted kidnapping in violation of R.C. 2905.01(A)(3) and R.C. 2923.02, a second-degree felony. On February 17, 2023, Moore filed a motion to dismiss the indictment on double jeopardy grounds. On March 22, 2023, the trial court issued a decision denying this motion.

*Assignment of Error*

**{¶8}** Moore filed his notice of appeal on April 11, 2023. In this interlocutory appeal, he raises the following assignment of error:

> **The trial court erred as a matter of law by denying Mr. Moore's motion to dismiss on grounds of Double Jeopardy and the continued prosecution violates Article I, Section 10 of the Ohio Constitution and R.C. 2941.25.**

Moore argues that the vacatur of his convictions for improper venue means that the two reindicted charges in this case are barred by constitutional and statutory double-jeopardy protections.[2]

---

[2] Moore was not charged with retaliation in Marion County after the Sixth District reversed his conviction for retaliation over the State's failure to prove an essential element of the offense in addition to the fact that the charge was tried in an improper venue. *Moore*, 2020-Ohio-6781, ¶ 36, 57. He was reindicted on the counts of conspiracy to commit aggravated murder and attempted aggravated murder. The prior convictions that correspond to these two reindicted charges were vacated only over the issue of improper venue. *Id*. at ¶ 57. The State also indicted Moore on the additional charges of conspiracy to commit kidnapping and attempted kidnapping in Marion County. However, Moore does not challenge these additional charges, stating that "neither of these counts are at issue in this appeal." (Appellant's Brief, 6). For this reason, we will not address the additional charges in this opinion.

*Standard of Review*

**{¶9}** "Appellate courts apply a de novo standard of review when reviewing the denial of a motion to dismiss an indictment on the grounds of double jeopardy." *State v. Rocubert*, 3d Dist. Shelby No. 17-23-11, 2024-Ohio-395, ¶ 15, quoting *State v. Anderson*, 148 Ohio St.3d 74, 2016-Ohio-5791, 68 N.E.3d 790, ¶ 20. Under the this standard, the appellate court conducts an independent review of the record and does not give deference to the trial court's determination. *State v. Mason*, 2016-Ohio-8400, 111 N.E.3d 432, ¶ 17 (3d Dist.).

*Legal Standard*

**{¶10}** "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 22. "Through the Fourteenth Amendment to the United States Constitution, this protection applies to individuals prosecuted by the state of Ohio." *State v. Mutter*, 150 Ohio St.3d 429, 2017-Ohio-2928 82 N.E.3d 1141, ¶ 15. Further, "Section 10, Article I of the Ohio Constitution also provides that '[n]o person shall be twice put in jeopardy for the same offense.'" *State v. Uskert*, 85 Ohio St.3d 593, 594-595, 1999-Ohio-289, 709 N.E.2d 1200 (1999).

**{¶11}** In general, "[w]here the provisions are similar and no persuasive reason for a differing interpretation is presented," the Ohio Supreme Court "has determined that protections afforded by Ohio's Constitution are coextensive with

those provided by the United States Constitution." *State v. Robinette*, 80 Ohio St.3d 234, 238, 1997-Ohio-343, 685 N.E.2d 762 (1997). Consistent with this framework, the Ohio Supreme Court has held that "[t]he protections afforded by the Ohio and United States Constitutions' Double Jeopardy Clauses are coextensive." *Mutter* at ¶ 15. Thus, "the Ohio Constitution affords no greater double jeopardy protections than the Fifth Amendment." *In re A.G.*, 148 Ohio St.3d 118, 2016-Ohio-3306, 69 N.E.3d 646, ¶ 38.

{¶12} Under the Double Jeopardy Clauses, a retrial of the underlying charge is not always barred after a conviction is reversed or vacated on appeal. *State v. Kareski*, 137 Ohio St.3d 92, 2013-Ohio-4008, 998 N.E.2d 410, ¶ 14. Rather, the ability of the State to retry the charge depends upon the basis of the reversal. *Id*. "In general, if the reversal is based on an error that occurred at trial, a retrial is appropriate." *Id*. The rationale behind this rule is that a reversal over a procedural or trial error "'implies nothing with respect to the guilt or innocence of the defendant,' but is simply 'a determination that [he or she] has been convicted through a judicial process which is defective in some fundamental respect.'" *Id*., quoting *Lockhart v. Nelson*, 488 U.S. 33, 40, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). For this reason, the "appellate remedy" for a

> defective process is to remand the case to the trial court, usually for retrial, because 'the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.'

*State v. Harris*, 6th Dist. Erie No. E-04-034, 2007-Ohio-2397, ¶ 13, quoting *Burks v. United States*, 437 U.S. 1, 15, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).  Accordingly, "the federal and Ohio Double Jeopardy Clauses generally are not offended when the state retries a defendant after a conviction is reversed on appeal." *Anderson*, *supra*, at ¶ 33, citing *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, at the syllabus.

{¶13} In contrast, "[t]he constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal."  *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 139, quoting *Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).  A determination from a jury, a trial judge, or appellate court that "the evidence presented by the state is 'insufficient to establish criminal liability for an offense' amounts to an acquittal * * *." *City of Girard v. Giordano*, 155 Ohio St.3d 470, 2018-Ohio-5024, 122 N.E.3d 151, ¶ 9-10, quoting *Evans v. Michigan*, 568 U.S. 313, 318-319, 133 S.Ct. 1069, 185 L.Ed.2d 124 (2013).  An acquittal has also been held to "include[] 'a ruling by the court that the evidence is insufficient to convict[]' * * * and any other 'rulin[g] which relate[s] to the ultimate question of guilt or innocence.'" *State v. Street*, 7th Dist. Jefferson No. 22 JE 0025, 2023-Ohio-4405, 230 N.E.3d 1229, ¶ 56, quoting *United States v. Scott*, 437 U.S. 82, 99, 98, and n. 11, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978).  *See also Evans* at 318-319.

**{¶14}** The rationale behind the general rule barring a retrial after an acquittal of the offense is simple: "if a conviction is reversed on appeal because 'the state fails to present sufficient evidence to prove every element of the crime,' then the state 'should not get a second opportunity to do that which it failed to do the first time.'" *Anderson*, *supra*, at ¶ 33, quoting *State v. Lovejoy*, 79 Ohio St.3d 440, 450, 1997-Ohio-371, 683 N.E.2d 1112 (1997).

**{¶15}** Further, "Article I, Section 10 of the Ohio Constitution affords the accused the right to 'a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed.'" *State v. Foreman*, 166 Ohio St.3d 204, 2021-Ohio-3409, 184 N.E.3d 70, ¶ 12. Accordingly, the State must establish venue "beyond a reasonable doubt before a conviction can be sustained." *State v. Gonzalez*, 188 Ohio App.3d 121, 2010-Ohio-982, 934 N.E.2d 948, ¶ 9 (3d Dist.). However, "[v]enue is not a material element of any offense charged. The elements of the offense charged and the venue of the matter are separate and distinct." *State v. Draggo*, 65 Ohio St.2d 88, 90, 418 N.E.2d 1343 (1981).

*Legal Analysis*

**{¶16}** Within the last year, the United States Supreme Court decided the question of "whether the [United States] Constitution permits the retrial of a defendant following a trial in an improper venue and before a jury drawn from the wrong district" in *Smith v. United States*, 599 U.S. 236, 241, 143 S.Ct. 1594, 216 L.Ed.2d 238 (2023). In that case, the defendant made a motion for acquittal, arguing

that venue was improper for the theft of trade secrets charge against him.  *Id*. at 240.

After the trial court denied this motion, the United States Court of Appeals for the

Eleventh Circuit reviewed this determination and concluded that venue was

improper on this charge.  *United States v. Smith*, 22 F.4th 1236, 1244 (11th Cir.

2022).  The Eleventh Circuit then rejected the defendant's argument that double-

jeopardy protections would bar reprosecution of this offense in the proper venue and

vacated his conviction for theft of trade secrets.  *Id*.

{¶17} After reviewing the facts of the *Smith* case, the justices of the United

States Supreme Court unanimously held that the Double Jeopardy Clause does not

bar a retrial in a proper venue in such a situation.  *Smith*, 599 U.S. 236, at 252.  In

reaching this conclusion, the United States Supreme Court relied on "the general

rule that '[c]ulpability * * * is the touchstone' for determining whether retrial is

permitted under the Double Jeopardy Clause."  *Smith*, 599 U.S. 236, at 253, quoting

*Evans, supra,* at 324.  "When a trial terminates with a finding that the defendant's

'criminal culpability had not been established,' retrial is prohibited."  *Smith*, 599

U.S. 236, at 253, quoting *Burks, supra*, at 10.

{¶18} In contrast, "retrial is permissible when a trial terminates 'on a basis

unrelated to factual guilt or innocence of the offence of which [the defendant] is

accused.'"  *Smith*, 599 U.S. 236, at 253, quoting *Scott*, *supra*, at 99.  The United

States Supreme Court then concluded that, when a conviction is reversed for

improper venue, the "bottom-line question of 'criminal culpability'" is not resolved

* * *." *Smith*, 599 U.S. 236, at 253, quoting *Evans, supra,* at 324. "Instead, such a reversal is quintessentially a decision that 'the Government's case against [the defendant] must fail even though it might satisfy the trier of fact that he was guilty beyond a reasonable doubt.'" *Smith*, 599 U.S. 236, at 254, quoting *Scott, supra,* at 96. For this reason, a judicial determination that venue is improper does not bar a retrial of the charges in the proper venue under the Double Jeopardy Clause of the United States Constitution. *Smith*, 599 U.S. 236, at 252-253.

{¶19} Four years prior to the *Smith* decision, the United States Court of Appeals for the Sixth Circuit reached the same conclusion in *United States v. Petlechkov*, *supra*, and provided the following guidance about what constitutes an acquittal that bars a retrial under the Double Jeopardy Clause:

> An 'acquittal' is 'any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense.' *Evans*, 568 U.S. at 318, 133 S.Ct. 1069. In contrast, procedural dismissals 'unrelated to factual guilt or innocence' do not implicate double jeopardy concerns. *Id.* at 319, 133 S.Ct. 1069. * * *
>
> A dismissal on venue grounds does not qualify as an 'acquittal' for double jeopardy purposes. Though venue is a factual issue that the government must prove, it is not an element of the underlying criminal offense.

*Id.* at 771, citing *Wilkett v. United States*, 655 F.2d 1007, 1011-1012 (10th Cir. 1981) (holding that "[v]enue is wholly neutral; it is a question of procedure, more than

anything else, and it does not either prove or disprove the guilt of the accused"). *See also Moore*, 2022-Ohio-1460, at ¶ 26, citing *Petlechkov* at 771.[3]

**{¶20}** Turning to the case presently before us, the State is seeking to retry Moore in Marion County on two charges that were previously brought to trial in Erie County. *Moore*, 2020-Ohio-6781, ¶ 2, 57. At his trial in Erie County, Moore made a Crim.R. 29 motion for acquittal, arguing venue was improper. After the trial court denied his motion, the jury returned verdicts of guilty on the two charges on which he was reindicted in Marion County. *Id.* at ¶ 20. As in *Smith*, the appellate court concluded that venue was improper and then vacated Moore's convictions. *Id.* at ¶ 56-59. *See Smith*, 22 F.4th 1236, 1244.

**{¶21}** Further, the charges that Moore challenges on double-jeopardy grounds in this appeal also have not been previously reversed over any purported failure on the part of the State to establish Moore's criminal culpability. *Moore*, 2020-Ohio-6781, at ¶ 57. Thus, under the United States Supreme Court's reasoning in *Smith* and the Sixth Circuit's reasoning in *Petlechkov*, the double-jeopardy protections of the United States Constitution do not prohibit a retrial of the two charges that were brought against Moore in Marion County. *Smith*, 599 U.S. 236, at 253-254; *Petlechkov* at 771.

---

[3] The Ohio Supreme Court's decision in *Moore* was decided roughly one year before the United States Supreme Court's decision in *Smith*. While considering the Sixth District's resolution of Moore's venue challenge, the Ohio Supreme Court expressly declined to address whether double jeopardy barred a retrial as this was not a proposition of law accepted for review. *Moore*, 2022-Ohio-1460, at ¶ 26. But in making this determination, the Ohio Supreme Court directed attention to the Sixth Circuit's decision in *Petlechkov*. *Moore*, 2022-Ohio-1460, at ¶ 26, citing *Petlechkov* at 771.

**{¶22}** In response to *Smith*, Moore asserts that we should hold that the Ohio Constitution provides greater double-jeopardy protections than the United States Constitution. However, the longstanding position of Ohio law is that the constitutional protections of the federal and state Double Jeopardy Clauses are coextensive. *Anderson*, *supra*, at ¶ 21 (The Ohio Supreme Court has "recognized that these [double jeopardy] clauses are equivalent since at least 1893."). The rationale behind this position is not a mere desire for uniformity but is based on the text and history of the Double Jeopardy Clauses of the United States and Ohio Constitutions. *See State v. Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 1123, ¶ 27. As the Ohio Supreme Court has explained, "[t]he wording of the two provisions is nearly identical, and Ohio's provision was included in the first Ohio Constitution, which was adopted about a decade after the ratification of the federal Bill of Rights." *Id.* at ¶ 27.

**{¶23}** Further, "[b]oth provisions are rooted in protections afforded by English common law." *Giordano*, *supra*, at ¶ 7. *See also Hurley v. State,* 6 Ohio 399, 402 (1834) (holding that constitutional double-jeopardy protections are "the recognition of the common law principle on that subject"). Double-jeopardy protections were "based upon 'the three common-law pleas of autrefois acquit, autrefois convict, and pardon,' which 'prevented the retrial of a person who had previously been acquitted, convicted, or pardoned for the same offense.'" *Giordano*, *supra*, at ¶ 7, quoting *Scott*, *supra*, at 87. However, "no common-law

principle at the founding precluded retrial following a trial in an improper venue or before an improper jury." *Smith*, 599 U.S. 236, at 250.

**{¶24}** It is true that the Ohio Supreme Court is "not bound to walk in lockstep with the federal courts." *Smith*, 162 Ohio St.3d 353, at ¶ 28-29. However, the Ohio Supreme Court has also stated the following:

> We must be cautious and conservative when we are asked to expand constitutional rights under the Ohio Constitution, particularly when the provision in the Ohio Constitution is akin to a provision in the U.S. Constitution that has been reasonably interpreted by the [United States] Supreme Court.

*State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 76. Moore has not offered a reason based on the text or history of the Ohio Constitution that would suggest that its double-jeopardy protections are not coextensive with those contained in United States Constitution in this situation. *See Smith*, 162 Ohio St.3d 353, at ¶ 27.

**{¶25}** Rather, Moore asserts that we should hold that the Ohio Constitution provides greater double-jeopardy protections because of the Ohio Supreme Court's interpretation of R.C. 2945.67(A) in *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324. R.C. 2945.67(A) reads, in its relevant part, as follows:

> A prosecuting attorney * * * may appeal as a matter of right any decision of a trial court in a criminal case * * * which decision grants a motion to dismiss all or any part of an indictment, complaint, or information, a motion to suppress evidence, or a motion for the return of seized property or grants post conviction relief * * *, and may appeal by leave of the court to which the appeal is taken any other

decision, *except the final verdict*, of the trial court in a criminal case
* * *.

(Emphasis added.)  In *Hampton*, an investigating detective learned in the middle of the defendant's trial in Franklin County that the charged offenses had actually occurred in Fairfield County.  *Hampton* at ¶ 5.  After finding venue to be improper, the trial court granted the defendant's Crim.R. 29 motion rather than dismissing the case or granting a mistrial.  *Id*.

{¶26} On appeal, the issue before the Ohio Supreme Court was whether the State could appeal this decision under R.C. 2945.67 after the trial court had used a Crim.R. 29 motion to address the improper venue of the trial.  *Hampton* at ¶ 20. The Ohio Supreme Court concluded that the trial court created a "final verdict" within the meaning of R.C. 2945.67 by granting the Crim.R. 29 motion for improper venue.  *Id*. at ¶ 25.  For this reason, the State was not statutorily authorized to appeal the trial court's decision as of right.  *Id*.  Moore raises two main arguments based upon *Hampton*.

{¶27} First, Moore asserts that Hampton expands the double-jeopardy protections of the Ohio Constitution beyond those guaranteed by the United States Constitution.  But the Ohio Supreme Court *never* made a determination based upon the Double Jeopardy Clause of the Ohio Constitution in *Hampton*.  Rather, Hampton was a decision that interpreted R.C. 2945.67.  *See Hampton* at ¶ 25.  Over the years, the Ohio Supreme Court has issued several decisions that have described the

relationship between R.C. 2945.67 and the Double Jeopardy Clauses. In *State ex rel. Yates v. Court of Appeals for Montgomery County*, the Ohio Supreme Court stated that "R.C. 2945.67(A) prevents an appeal of *any* final verdict and is not tied to the Double Jeopardy Clause." (Emphasis sic.) *Id.* at 32 Ohio St.3d 30, 32, 512 N.E.2d 343 (1987). *Yates* also held that the issue of whether a Crim.R. 29(C) motion was "a final verdict" under R.C. 2945.67 was "not one of double jeopardy * * *." *Id.*

{¶28} In a subsequent decision, the Ohio Supreme Court held that R.C. 2945.67 "places independent limits on the state's ability to pursue a criminal appeal." *State v. Ramirez,* 159 Ohio St.3d 426, 2020-Ohio-602, 151 N.E.3d 598, ¶ 17. Since "double-jeopardy principles * * * do not prevent an appeal," R.C. 2945.67 "afford[s] greater protection to criminal defendants than the Double Jeopardy Clauses provide" with regard to the State's ability to appeal an unfavorable final verdict. *State v. Ramirez,* 159 Ohio St.3d 426, 2020-Ohio-602, 151 N.E.3d 598, ¶ 17, 19, citing *Yates* at 32 (noting that, in contrast to the wording of the Federal Criminal Appeals Act that existed at that time, R.C. 2945.67(A) does not bar appeals only where double-jeopardy protections would prevent further prosecution). *See also State v. Ross*, 128 Ohio St.3d 283, 2010-Ohio-6282, 943 N.E.2d 992, ¶ 15-16.

{¶29} These decisions do not suggest that the statutory constructions of R.C. 2945.67 define the extent of the protections that are provided by the Double Jeopardy Clause of the Ohio Constitution in the manner suggested by Moore. Thus,

the fact that a determination is a "final verdict" under R.C. 2945.67 does not necessarily mean that the protections of the Double Jeopardy Clause of the Ohio Constitution are triggered and bar a retrial of the charges.[4]

**{¶30}** But even if a trial court's decision to grant a Crim.R. 29 motion for improper venue creates a final verdict under R.C. 2945.67 that triggers the double-jeopardy protections of the Ohio Constitution, Moore never received such a ruling in this case. Rather, his Crim.R. 29 motion was denied by the trial court. Then, as the Eleventh Circuit did in *Smith*, the Sixth District vacated Moore's convictions on appeal. *Moore*, 2022-Ohio-6781, at ¶ 59; *Smith*, 22 F.4th 1236, at 1246. Unlike the defendant in *Hampton*, Moore—not the State—filed the direct appeal of his convictions and has not identified the favorable ruling from his previous trial that constitutes a final verdict within the meaning of R.C. 2945.67. *Moore*, 2022-Ohio-6781, ¶ 1. Thus, Moore has not demonstrated the applicability of R.C. 2945.67 to the facts of this case.

**{¶31}** Second, Moore asserts that the Ohio Supreme Court's decision in *Hampton* "holds the opposite" as the United States Supreme Court's decision in *Smith*. (Appellant's Brief, 7). In support of this assertion, he points to the fact that *Hampton* concluded that a Crim.R. 29 "motion *for acquittal*" was an appropriate

---

[4] In *State v. Honeycutt*, 12th Dist. Warren No. CA2013 02 018, 2014-Ohio-352, ¶ 32-33, the Twelfth District Court of Appeals relied on a broader interpretation of *Hampton* than we have in our analysis. However, the Twelfth District did not have the benefit of the United States Supreme Court's decision in *Smith* to guide its understanding of *Hampton*.

vehicle to address the issue of improper venue and that acquittals have been held to trigger double-jeopardy protections. (Emphasis added.) *Hampton*, *supra*, at ¶ 5, 23, citing Crim.R. 29. Thus, Moore argues that *Hampton* should be read as saying that a judicial determination of improper venue is an acquittal that triggers double-jeopardy protections and, therefore, contradicts the holding in *Smith*.

{¶32} However, the fact that *Hampton* holds that a Crim.R. 29 motion is an appropriate procedural vehicle in these circumstances does not bring these decisions into conflict. In *Smith*, the United States Supreme Court addressed the effect that granting a Rule 29 motion for improper venue has for the purposes of double jeopardy and, in so doing, directly addressed the purported point of conflict identified by Moore on appeal.[5] *Smith*, 599 U.S. 236, at 253. The United States Supreme Court explained that

> [t]he reversal of a conviction based on a violation of the Venue or Vicinage Clauses, even when styled as a 'judgment of acquittal' under Rule 29, plainly does not resolve "the bottom-line question of 'criminal culpability.'"

*Id.*, quoting *Evans*, *supra*, at 324, fn. 6, quoting *Burks*, *supra*, at 10. In other words, the fact that the procedural device is entitled a "motion to acquit" does not mean that its use constitutes an acquittal of the offense for the purposes of double jeopardy. *Smith*, 599 U.S. 236, at 254, citing *United States v. Martin Linen Co.*, 430

---

[5] Motions made under Federal Rule of Criminal Procedure 29 and Ohio Rule of Criminal Procedure 29(A) are both entitled "motion[s] for judgment of acquittal."

U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) ("[W]hat constitutes an 'acquittal' is not to be controlled by the form of the judge's action").

{¶33} "'[C]ulpability * * * is the touchstone' for determining whether retrial is permitted under the Double Jeopardy Clause," not the label of the motion used to challenge venue. *Smith*, 599 U.S. 236, at 253, quoting *Evans*, *supra*, at 324. Thus, for purposes of double jeopardy, an acquittal is "any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense." *Petlechkov*, *supra*, at 771, quoting *Evans*, *supra*, at 318. *See also* Wayne R. LaFave, et al., *Criminal Procedure*, Section 25.3(a) (3d Ed. 2000) ("[A] trial court's ruling that the prosecution's case-in-chief failed to establish venue, though framed as a judgment of acquittal, does not preclude retrial because venue is an element 'more procedural than substantive' which does not go to culpability.").

{¶34} Both *Hampton* and *Smith* recognize that a motion for acquittal can be used as a vehicle to challenge improper venue. *Hampton*, *supra*, at ¶ 23; *Smith*, 599 U.S. 236, at 253. However, only *Smith* explains the double-jeopardy implications of a decision to grant a motion for acquittal for improper venue. The fact that *Hampton* states a Crim.R. 29 motion is an appropriate *procedural* device to address improper venue does not mean that its use decides the *substantive* issue of whether the defendant is criminally liable. *See also State v. Malinovsky*, 60 Ohio St.3d 20, 24, 573 N.E.2d 22 (1991) ("In *Scott*, the United States Supreme Court held that double jeopardy protection is not absolute until there is a dismissal or acquittal based

upon a factual finding of innocence."), citing *Scott*, *supra*, at 96-97. In the absence of an alternative definition of an acquittal for double jeopardy purposes, we conclude that *Hampton* does not contradict *Smith* in the manner alleged by Moore.

{¶35} In summary, *Hampton* interpreted R.C. 2967.45 to decide whether a trial court's decision to grant a Crim.R. 29 could be appealed under a statute rather than whether charges could be retried under the Double Jeopardy Clauses. *Hampton*, *supra*, at ¶ 25. In contrast, *Smith* interpreted the Double Jeopardy Clause to decide the exact issue before us in this case: whether a judicial determination that venue was improper barred retrial of those charges in a proper venue after the convictions were vacated on appeal. *Smith*, 599 U.S. 236, at 252-253. As the double-jeopardy protections of the Ohio Constitution and United States Constitution have been held to be coextensive, we will follow *Smith*.

{¶36} In the facts of the case presently before us, neither jurors nor judges have ever made a determination that the State failed to establish Moore's criminal culpability for the two charges that he challenges in this appeal. *Smith*, 599 U.S. 236, at 253, quoting *Burks*, *supra*, at 10. After his trial in Erie County, the jury returned verdicts of guilty on all of the charges against him. *Moore*, 2020-Ohio-6781, at ¶ 20. In his prior appeal, the Sixth District vacated his convictions of conspiracy to commit aggravated murder and attempted aggravated murder for improper venue but never determined that the State failed to prove any of the essential elements of either of these offenses. *Id.* at ¶ 57. Thus, the judicial

determination that the venue of Moore's trial in Erie County was improper "d[id] not trigger" constitutional double-jeopardy protections because this ruling did "not adjudicate * * * [his] culpability." *Smith*, 599 U.S. 236, at 254. Accordingly, the Double Jeopardy Clauses of the United States Constitution and the Ohio Constitution do not bar a retrial of the charges of conspiracy to commit aggravated murder and attempted aggravated murder in Marion County.

{¶37} We turn now to Moore's arguments based upon Ohio's statutory double-jeopardy protections. On appeal, he asserts that R.C. 2941.25 bars retrial of these charges. Double-jeopardy protections guard "against three distinct wrongs: '(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.'" *Giordano*, *supra*, at ¶ 8, quoting *State v. Gustafson*, 76 Ohio St.3d 425, 432, 1996-Ohio-299, 668 N.E.2d 435 (1996). "R.C. 2941.25 codifies the double jeopardy protection against multiple punishments for the same offense." *State v. Pope*, 2017-Ohio-1308, 88 N.E.3d 584, ¶ 29 (2d Dist.).

{¶38} However, R.C. 2941.25 does not address claims that allege double jeopardy prevents successive prosecutions. *State v. Woodruff*, 3d Dist. Logan No. 8-14-21, 2015-Ohio-1342, ¶ 9. *See also State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542, fn. 3; *Pope* at ¶ 29. Moore has not explained how an analysis under R.C. 2941.25 is applicable to the facts of this case or would bar a retrial of these charges. Since Moore asserts that the charges in this case constitute

an impermissible successive prosecution, we conclude that Moore's arguments in reference to R.C. 2941.25 are without merit.

{¶39} Finally, Moore argues that the implications of *Yeager v. United States* required the trial court to hold an evidentiary hearing on his motion to dismiss in this case. *Id.* at 557 U.S. 110, 129 S.Ct. 2360, 174 L.Ed.2d 78 (2009). In *Yeager*, a jury acquitted the defendant of multiple fraud charges but could not reach verdicts on the insider trading charges. *Id*. at 115. The District Court declared a mistrial as to the charges on which the jury remained hung. *Id*. The defendant was then reindicted on several of the insider trading charges. *Id*. In a motion to dismiss, the defendant

> argued that the jury's acquittals had necessarily decided that he did not possess material, nonpublic information * * * [and that,] because reprosecution for insider trading would require the Government to prove that critical fact, the issue-preclusion component of the Double Jeopardy Clause barred a second trial of that issue and mandated dismissal of all of the insider trading counts.

*Id*. On appeal, the Fifth Circuit Court of Appeals concluded that, by entering acquittals on the fraud charges, the jury must have decided that the defendant did not have any insider information. *Id*. at 116, quoting *United States v. Yeager*, 521 F.3d 367, 377 (5th Cir. 2008). The Fifth Circuit then

> acknowledged that this factual determination would normally preclude the Government from retrying petitioner * * *.

> The * * * [Fifth Circuit] was nevertheless persuaded that a truly rational jury, having concluded that petitioner did not have any insider information, would have acquitted him on the insider trading counts.

> *** Considering 'the hung counts along with the acquittals,' the court found it impossible 'to decide with any certainty what the jury necessarily determined.'

*Yeager*, 557 U.S. 110, at 116, quoting *Yeager*, 521 F.3d 367, at 378. The United States Supreme Court reversed the Fifth Circuit and held the following:

> [T]he consideration of hung counts has no place in the issue-preclusion analysis. *** To identify what a jury necessarily determined at trial, courts should scrutinize a jury's decisions, not its failures to decide. *** Thus, if the possession of insider information was a critical issue of ultimate fact in all of the charges against petitioner, a jury verdict that necessarily decided that issue in his favor protects him from prosecution for any charge for which that is an essential element.

*Id*. at 123. Noting that the District Court and the Fifth Circuit disagreed about "what the jury necessarily decided in its acquittals," the United States Supreme Court stated that the Fifth Circuit could "revisit its factual analysis in light of the Government's arguments ***" about whether "the jury necessarily resolved ***an issue of ultimate fact" in the defendant's favor. *Id*. at 125-126.

{¶40} Based on *Yeager*, Moore asserts that a "jury's findings of fact made during the first trial must be considered when determining whether double jeopardy applies to a second trial" and argues that "[t]he record contains no facts about the first prosecution because no hearing was held." (Appellant's Brief, 9). However, in *Yeager*, the jury failed to reach a verdict on a number of charges and returned general verdicts of acquittal on other charges. For this reason, the District Court and the Fifth Circuit had to conduct a factual analysis to determine whether the

acquittals necessarily resolved a critical issue of ultimate fact in favor of the defendant that would bar a retrial of the charges on which the jury failed to reach a verdict. *Yeager*, 557 U.S. 110, at 116, 125-126.

{¶41} However, after his trial in Erie County, the jury returned verdicts of guilty on all of the charges against Moore. *Moore*, 2020-Ohio-6781, ¶ 20. Thus, the jury did not arguably resolve any critical issues of ultimate fact in Moore's favor. Accordingly, no factual analysis of the kind in *Yeager* was necessary to determine whether a jury finding in Moore's favor triggered the issue-preclusive effects of the Double Jeopardy Clauses with regard to the charges brought in Marion County. In other words, since the jury did not return a general verdict of acquittal, the trial court did not need to examine the double jeopardy implications of a jury's general verdict of acquittal. For these reasons, we conclude that Moore's arguments based on *Yeager* do not establish that the trial court erred by failing to hold an evidentiary hearing.

{¶42} In summary, after examining the evidence in the record and the arguments raised on appeal, we conclude that the trial court did not err in denying Moore's motion to dismiss on double jeopardy grounds. A judicial determination that venue is improper does not trigger the double jeopardy clauses and does not, therefore, bar a retrial of the charges in the proper venue. *Smith*, 599 U.S. 236, at 252-254. Accordingly, his sole assignment of error is overruled.

*Conclusion*

-24-

{¶43} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Marion County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**WALDICK and ZIMMERMAN, J.J., concur.**

**/hls**